STATE OF NORTH CAROLINA, ex rel. FRANK J. YEAGER, DIS-
TRICT ATTORNEY v. JOHN WILLIAM NEAL and PARKVIEW
THEATER, INC.

No. 7421SC1060

(Filed 6 August 1975)

**Obscenity — movie — literary and artistic value**

The trial court did not err as a matter of law in concluding that a
motion picture was not obscene where the court found that the State
failed to prove that the film taken as a whole lacks serious literary,
artistic, political, educational or scientific value and that the film taken
as a whole does have serious literary and artistic value.

Judge MARTIN concurring.

Chief Judge BROCK dissenting.

APPEAL by petitioner from *Exum, Judge*. Judgment en-
tered 3 October 1974 in Superior Court, FORSYTH County. Heard
in the Court of Appeals 12 March 1975.

This action was started under the provisions of G.S. 14-190.2
to have a motion picture exhibited by respondents declared
obscene within the meaning of G.S. 14-190.1.

After hearing the case Judge Exum entered judgment in
pertinent part as follows:

"1. The State has failed to satisfy the Court that the
film taken as a whole lacks serious literary, artistic, politi-
cal, scientific or educational value.

2. The Court finds as a fact that the film taken as a
whole does have serious literary and artistic value.

3. Since the film taken as a whole does not lack serious
literary or artistic value, it is unnecessary to decide whether
the sexual scenes in the film are patently offensive or appeal
to the prurient interest.

CONCLUSION OF LAW

Based on the foregoing findings of fact, the Court
concludes as a matter of law that the film is not obscene
within the meaning of that term in North Carolina General
Statutes 14-190.1.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Complaint of the District Attorney is hereby dismissed.

This the 3 day of October, 1974.

/s/ J. G. EXUM, JR.
James G. Exum, Jr., Superior Court Judge."

The petitioner appealed.

*Attorney General Edmisten, by Deputy Attorney General Andrew A. Vanore, Jr., for the State.*

*Michael K. Curtis and George M. Cleland, for defendant appellees.*

VAUGHN, Judge.

Petitioner did not take exception to any of the judge's findings of fact or his failure to find additional facts. The validity of the findings by Judge Exum are not, therefore, before this Court.

The only assignments of error brought forward on appeal are Nos. 1 and 10. Both are, in most general terms, directed at the judge's conclusion that, since he had decided the film has serious literary and artistic value, it was unnecessary for him to decide whether the sexual scenes in the film are patently offensive or appeal to the prurient interest.

The applicable parts of the statute are as follows:

"(b) For purposes of this Article any material is obscene if:

(1) The material depicts or describes in a patently offensive way sexual conduct specifically defined by subsection (c) of this section; and

(2) The average person applying contemporary statewide community standards relating to the depiction or representation of sexual matters would find that the material taken as a whole appeals to the prurient interest in sex; and

(3) The material lacks serious literary, artistic, political, educational or scientific value; and

(4) The material as used is not protected or privileged under the Constitution of the United States or the Constitution of North Carolina.

Yeager v. Neal

(c) Sexual conduct shall be defined as:

   (1) Patently offensive representations or descriptions of actual sexual intercourse, normal or perverted, anal or oral;

   (2) Patently offensive representations or descriptions of excretion in the context of sexual activity or a lewd exhibition of uncovered genitals, in the context of masturbation or other sexual activity." G.S. 14-190.1(b)(c).

This Court is of the opinion that a court could appraise more fairly any conceivable "serious literary and artistic value" of the film by *first* deciding whether: (1) the wide screen representations and descriptions of actual sexual intercourse, normal and perverted, anal and oral, the exhibition of uncovered genitals in the context of masturbation and other similar sexual activities amounted to a depiction of sexual conduct in a patently offensive way, and (2) whether the average person applying contemporary North Carolina standards relating to the depiction or representation of sexual matters in a public theatre would find that the material taken as a whole appeals to the prurient interest in sex.

In view, however, of the present form of the statute which, in addition to requiring positive findings on the questions of offensive display of sexual conduct patently offensive to the average person, requires an additional negative finding that the material *lacks* serious literary, artistic, political, educational or scientific value, we cannot say that the judge erred as a matter of law. Absent a finding that the material lacks the described values the material cannot be said to be "obscene" within the meaning of our present statute.

Consideration of the only assignments of error brought forward for review requires the conclusion that the judgment must be affirmed.

Affirmed.

Judge MARTIN concurs.

Chief Judge BROCK dissents.

Yeager v. Neal

Judge MARTIN concurring:

Due to the unusual posture of the present case on appeal, I must vote to affirm. The district attorney's limited number of exceptions restricts this Court's review and presents only a narrow issue for consideration. Such exceptions do not invoke the full scope of review to which the State is entitled under the statute.

Chief Judge BROCK dissenting:

The construction of the statute by the trial judge and by the majority of the panel of this Court will permit a film to depict in a patently offensive way sexual conduct which appeals to the prurient interest in sex, if the evidence tends to support a finding that the film contains some serious artistic or literary value.

Much of the testimony in this case involved the artistic and expert use of the camera. Anyone viewing the film would agree that the cameramen were expert in clearly and vividly recording the varied and numerous sex acts. However expertly done, the scenes were patently offensive portrayals of sexual conduct. There were two or three brief scenes of beautiful countryside, but they were merely interludes between the sex acts, which were obviously the main theme of the film.

If the statute means what the trial judge and the majority of this panel says it means, it amounts to no prohibition against obscenity. A sex orgy of any kind will be permitted to be depicted so long as the camera is expertly and artistically used, and the orgy is interrupted long enough to have a passage from Keats, Tennyson, Browning, or Shakespeare read, or a picturesque view of the ocean or mountains flashed across the screen. If the legislators intended to permit the public showing of a film of the kind involved in this case, I do not believe it would have bothered to enact a prohibitory statute of any kind.

I think this Court should look at the real issue involved. Are the artistic and literary phases of the film inserted therein merely as a vehicle upon which to portray patently offensive scenes of sexual intercourse, normal and perverted, anal and oral?

The trial judge seems to have felt bound by the testimony of "experts" who believed the film to contain serious artistic

and literary value. I do not feel that the trial or appellate courts are bound by such "expert" testimony with respect to pictures, motion pictures, or printed matter. The courts are not required to be blind and unfeeling. The trial court and the appellate courts can view pictures, motion pictures, or printed matter to determine whether the sexual conduct portrayed therein is patently offensive and whether it contains bona fide, serious literary or artistic value.

No court should undertake to pass upon a question of this nature without an actual court viewing of the material involved so that it can exercise its judgment upon patently offensive sexual conduct and serious artistic or literary value. This panel of the Court has viewed the entire film. It is my understanding that my brethren agree with me that the film depicts in a patently offensive way portrayals of actual sexual intercourse, normal and perverted, anal and oral, and a lewd exhibition of uncovered genitals in the context of masturbation. However, because of the difference in our interpretation of the statute, and because of the failure of the solicitor to make proper exceptions, they feel compelled to affirm.

I vote to reverse.